HIRSCH ADELL (CSB 34208) and
J. DAVID SACKMAN (CSB 106703) Members of
REICH, ADELL & CVITAN
A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010
Telephone: (213) 386-3860
Facsimile: (213) 386-5583
email: jds@rac-law.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE SOUTHERN CALIFORNIA BAKERY DRIVERS SECURITY FUND; DIRK GEERSEN,<br><br>Plaintiffs,<br><br>vs.<br><br>RICK MIDDLETON; BOB DOSS; RONN ENGLISH; PERRI NEWELL; SOUTH BAY TEAMSTERS AND EMPLOYERS HEALTH AND WELFARE AND RELATED BENEFITS TRUST FUND,<br><br>Defendants. | CASE NO. CV 03-5550 R (RZx)<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOLLOWING REMAND<br><br>Pretrial Date: August 11, 2008<br>Trial Date: August 26, 2008<br><br>Date: August 4, 2008<br>Time: 10:00 a.m.<br>Ctrm: 8 (Spring St.) |

# TABLE OF CONTENTS

PAGE(S)

I. INTRODUCTION .......... 1

II. SUMMARY OF FACTS AND PROCEEDINGS .......... 2

- A. FACTS .......... 2
- B. PROCEEDINGS .......... 5

III. ARGUMENT .......... 8

- A. THE ONLY ISSUE ON REMAND IS TO DETERMINE THE APPROPRIATE REMEDY FOR THE BREACH OF FIDUCIARY DUTIES BY DEFENDANTS .......... 8
- B. THE ASSETS OF THE BAKERY DRIVERS SHOULD BE PLACED IN TRUST, OUT OF THE CONTROL OF DEFENDANTS .......... 10
- C. DEFENDANTS SHOULD BE ORDERED TO PROVIDE AN ACCOUNTING OF THEIR HANDLING OF PLAINTIFFS' ASSETS, TO A MASTER APPOINTED BY THE COURT .......... 12
- D. BASED ON THE ACCOUNTING, JUDGMENT SHOULD BE ENTERED FOR PERSONAL LIABILITY OF THE DEFENDANTS .......... 14

IV. CONCLUSION .......... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406 (9th Cir. 1988) .......... 11, 12

*Donovan v. Bierwirth*, 754 F.2d 1049 (2d Cir.1985) .......... 13

*Firth v. United States*, 554 F.2d 990 (9th Cir.1977) .......... 8

*Great West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002) .......... 10-11

*Horn v. McQueen*, 215 F. Supp. 2d 867 (W.D.Ky.,2002) .......... 12

*In re Sanford Fork & Tool Co.*, 160 U.S. 247, 16 S. Ct. 291, 40 L. Ed. 414 (1895) .......... 8

*John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) .......... 7

*Kim v. Fujikawa*, 871 F.2d 1427 (9th Cir.1989) .......... 13

*Landwehr v. DuPree*, 72 F.3d 726 (9th Cir. 1995) .......... 11

*Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254 (9th Cir. 1984) .......... 10

*Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001) .......... 13

*Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activists*, 422 F.3d 949 (9th Cir. 2005) .......... 8

*Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599 (8th Cir.1995) .......... 13

*Secretary of U.S. Department of Labor v. Gilley*, 290 F.3d 827 (6th Cir. 2002) .......... 13

*Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006) .......... 11

*Stevens v. F/V Bonnie Doon*, 731 F.2d 1433 (9th Cir. 1984) .......... 8

*Trustees of the Southern California Bakery Drivers Security Fund v. Middleton*, 474 F.3d 642 (9th Cir.), *cert. denied*, 128 S.Ct. 378 (2007) .................. *passim*

*United States v. Pegg*, 782 F.2d 1498 (9th Cir.1986) .................................................................. 11

*U.S. v. Cote*, 51 F.3d 178 (9th Cir. 1995) ........................................................................ 8

**FEDERAL STATUTES AND RULES**

Labor-Management Relations Act (LMRA)

§ 301(a), 29 U.S.C. § 185(a) ............................................................................ 6
§ 302(c)(5), 29 U.S.C. § 186(c)(5) ................................................................... 3

Employee Retirement Income Security Act (ERISA)

§ 3(1), 29 U.S.C. § 1002(1) ........................................................................ 2, 3
§ 3(21)(A), 29 U.S.C. § 1002(21)(A) ................................................................ 6
§ 3(37)(A), 29 U.S.C. § 1002(37)(A) ........................................................... 2, 3
§ 401(b)(2), 29 U.S.C. § 1101(b)(2) .................................................................. 7
§ 403(a), 29 U.S.C. § 1103(a) ......................................................................... 11
§ 404(a)(1), 29 U.S.C. § 1104(a)(1) ................................................................... 1
§ 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) .......................................................... 5
§ 409, 29 U.S.C. § 1109 ................................................................................. 5
§ 409(a), 29 U.S.C. § 1109(a) ................................................................ *passim*
§ 413, 29 U.S.C. § 1113 ................................................................................. 9
§ 502(a)(2), 29 U.S.C. § 1132(a)(2) ................................................................... 5
§ 502(a)(3), 29 U.S.C. § 1132(a)(3) ................................................................... 5

Federal Rules of Civil Procedure

53 ........................................................................................................ *passim*

Federal Rules of Evidence

1006 ....................................................................................................... 10

Local Rules

53 .......................................................................................................... 14
53-2 ................................................................................................... 14, 15
54-3 ........................................................................................................ 15
54-4.10 ................................................................................................... 14
54-12 ...................................................................................................... 15

**TEXT**

I Dan. B. Dobbs, Dobbs Law of Remedies: Damages-Equity-Jurisdiction (2nd Ed. 1993) .......... 12

## I. INTRODUCTION

This case comes to this Court on remand from the Ninth Circuit. In a published opinion, Trustees of the Southern California Bakery Drivers Security Fund v. Middleton, 474 F.3d 642 (9th Cir.), *cert. denied*, 128 S.Ct. 378 (2007), the Ninth Circuit found that Defendants were liable for violation of fiduciary duties under the Employee Retirement Income Security Act (ERISA) § 404(a)(1), 29 U.S.C. § 1104(a)(1). The Ninth Circuit remanded this case "to the district court so that it may determine the appropriate remedy" for this breach of ERISA fiduciary duty. 474 F.3d 642, 647.

Unfortunately, Judge Edward Rafeedie, who had originally heard the case, passed away shortly after the Mandate was issued. The case was therefore re-assigned to Judge Manuel L. Real. The case has been set for a pretrial conference on August 11, and trial on August 26, 2008.

Plaintiffs believe the limited purpose of the remand can be achieved based on the undisputed facts established by the existing record. We therefore bring this motion for summary judgment to bring a final resolution to this case. The only issue on remand is to determine the "appropriate remedy" under ERISA § 409(a), 29 U.S.C. § 1109(a), for the fiduciary breach already decided on appeal. We propose the following remedy as appropriate:

*First*, that the assets which the Ninth Circuit already decided belong to the Plaintiffs be taken out of the control of the Defendants (who have already been found to have breached their duties toward those assets) and put into a separate trust.

*Second*, that Defendants provide an Accounting of Plaintiffs' assets under their control, to be performed by a special Master appointed under Fed. R. Civ. P. 53.

*Finally* that, based on the results of the Accounting, the Court enter judgment for personal liability against Defendants, for any profits they obtained from Plaintiffs' assets, less any genuine expenses they incurred.

## II. SUMMARY OF FACTS AND PROCEEDINGS

### A. FACTS

All of the facts necessary to resolve what is left of this case, have either been stipulated to by the parties, or established without dispute in the evidence already submitted to the District Court. Accompanying this Motion is a Request for Judicial Notice, with copies of the relevant documents already on file in this case. (We will cite to the original documents, as filed with this Court.) The are:

| Exhibit | Description | Docket No. |
|---|---|---|
| A | Stipulation of Facts | 40 |
| B | Declaration of Linda Tonnancour (Tonnancour Decl), with attached Exhibits:<br>4 1996 Agreement<br>6 Letter to Krufka 1/29/01<br>44 Letter to Cox 1/10/2002<br>54 Summary of Plan Administration | 38 |
| C | Declaration of Hirsch Adell (Adell Decl), with attached Exhibits:<br>48 Letter from Halford 5/31/02 | 37 |
| D | Supplemental Declaration of J. David Sackman in Support of Motion for Summary Judgment (Supp Sackman Decl) | 55 |

Plaintiffs Trustees of the Southern California Bakery Drivers Security Fund (Bakery Drivers Trustees) are the trustees and fiduciaries of the Southern California Bakery Drivers Security Fund (Bakery Drivers Fund), and appear in their fiduciary capacity as such.[1/] The Bakery Drivers Fund is an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1) and a multi-employer plan within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A), created as

1/ Also a plaintiff is Dirk Geersen (Participant), one of the participants of the Bakery Drivers Fund since 1991. [Tonnancour Decl ¶ 5].

159595.1

an express trust, pursuant to various collective bargaining agreements, in accordance with LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5). [Stipulation of Facts ¶ 1].

Defendant South Bay Teamsters and Employers Health and Welfare and Related Benefits Trust Fund (South Bay Trust) is also an employee welfare benefit plan, and a multi-employer plan within the meaning of ERISA §§ 3(1) and 3(37)(A), 29 U.S.C. §§ 1002(1) and 1002(37)(A), and was also created as an express trust, pursuant to various collective bargaining agreements. [Stipulation of Facts ¶ 2]. Defendants Rick Middleton; Bob Doss; Ronn English; Perri Newell (South Bay Trustees), are each trustees and fiduciaries of the South Bay Trust. [Stipulation of Facts ¶ 3].

Among other benefits, the Bakery Drivers Fund provides death and dismemberment benefits to its participants and designated beneficiaries. [Stipulation of Facts ¶ 4]. Prior to August 1987, the Bakery Drivers Fund provided these death and dismemberment benefits through the purchase of insurance policies from an insurance company. [Stipulation of Facts ¶ 6].

Effective August 1, 1987, the Trustees of the Bakery Drivers Fund and the Trustees of the South Bay Trust each approved an arrangement, whereby the Bakery Drivers Fund would pay to the South Bay Trust $5.50 per month for each of the active Bakery Drivers Fund participants, and the South Bay Trust would provide certain death and related benefits for those participants and certain retirees. That arrangement was later reflected in a written document, which was renewed for various periods after that. [Stipulation of Facts ¶ 7].[2/]

---

2/ These "Death Benefit Agreements" are the following exhibits, attached to the Tonnancour Declaration: Exhibit 1, for 8/1/1987 - 7/31/1990; Exhibit 2, for 8/1/1990 - 7/31/1993; Exhibit 3, for 8/1/1993 - 7/31/1996; Exhibit 4, for 8/1/1996 until termination. This last Agreement contained an automatic renewal clause. [Id.].

The third-party administration of the benefits in the Death Benefit Agreements, during their terms, was provided by Southwest Administrators, Inc. (SWA). [Stipulation of Facts ¶ 9]. SWA is, and has been, the third-party administrator for the Bakery Drivers Fund. [Tonnancour Decl ¶¶ 1-2]. For each month from August 1987 through May 2001, SWA sent a report to the South Bay Trust, listing the participants of the Bakery Drivers Fund for that month. Accompanying each monthly report was a check, equivalent to the number of Bakery Drivers Fund participants listed, times $5.50. The check was drawn from an account of the Bakery Drivers Fund. Each check was deposited by the South Bay Trust in a South Bay Trust Account. [Stipulation of Facts ¶ 10].

A total of $2,753,642.00 was paid from the Bakery Drivers Fund to the South Bay Fund in this manner. [Tonnancour Decl ¶ 11; Ex. 54]. The South Bay Trust paid SWA, a total of $220,304.92, for its administrative services under the Death Benefit Agreement. [Stipulation of Facts ¶ 11; Tonnancour Decl ¶ 12; Ex. 54]. The total amount of claims paid by the South Bay Fund to Bakery Drivers Fund participants, retirees and/or their beneficiaries, pursuant to the Death Benefit Agreement was $770,768.19. [Tonnancour Decl ¶ 13; Ex. 54]. So, the payments by the Bakery Drivers Fund to the South Bay Fund exceeded the amount paid in claims, and paid for administrative expenses, by at least $1,762,568.89. [Tonnancour Decl ¶ 19; Ex. 54].

On January 29, 2001, the Bakery Drivers Trust (through SWA) sent a letter to the administrator of the South Bay Trust, to terminate the Death Benefit Agreement after May 31, 2001. [Stipulation of Facts ¶ 14]. After May 31, 2001, no further payments were made from the Bakery Drivers Fund to the South Bay Trust, no further payments were made by the South Bay Trust to SWA for services under the Death Benefit Agreements arising after that date, and no further claims under the Death Benefit Agreement were paid by the South Bay Trust, except claims which arose prior to that date. [Stipulation of Facts ¶ 15].

As directed by the Trustees of the Bakery Drivers Fund, SWA sent a letter to the administrator of the South Bay Trust, dated January 10, 2002, to "request the transfer to the Security Fund of that portion of South Bay death benefit reserves as of June 1, 2001, attributable to the payments made on behalf of the Security Fund participants over the relevant period." [Stipulation of Facts ¶ 16; *see also* Exhibit 44 to Tonancour Decl]. At the South Bay Trust meeting of Trustees on March 20, 2002, that matter was discussed, and the following action taken: "After discussion and upon motion duly made, seconded and unanimously carried the request from the Bakery Drivers is denied, and Counsel is instructed to inform Counsel for the Bakery Drivers Trust Fund of the Board's decision." Each of the South Bay Trustees currently named as defendants in this action, except Perri Newell (who was absent from that meeting), voted in favor of that motion. [Stipulation of Facts ¶ 17]. By letter dated May 31, 2002, Counsel for the South Bay Trust informed Counsel for the Bakery Drivers Trust Fund of the decision by the South Bay Trustees. [Stipulation of Facts ¶ 18; *see also*, Ex. 48 to Adell Decl.].

B. PROCEEDINGS

The original complaint in this case was filed on August 4, 2003, with three claims for relief:

- The First Claim was for violating the “exclusive benefit rule” of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), *as to the South Bay Fund*, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).
- The Second Claim was for breach of the fiduciary duties owed by the South Bay Trustees, *as to the Bakery Drivers Fund*, and specifically the Bakery Drivers Fund assets they exercised control over, under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief under ERISA § 409, 29 U.S.C. § 1109.

• The Third Claim was for a violation of the collective bargaining agreements, under which those contributions were originally made, under LMRA § 301(a), 29 U.S.C. § 185(a).

Defendants filed a motion to dismiss Plaintiffs' complaint. The District Court denied the motion as to the Second and Third Claims, but granted the motion as to the First Claim. [Docket No. 18]. Plaintiffs filed an Amended Complaint, and Defendants answered, which are the operative pleadings here. Plaintiffs have not pursued the First Claim, and it is no longer at issue.

The parties filed cross-motions for summary judgment in the District Court. Judge Rafeedie denied Plaintiffs' motion, and granted Defendants' motion, entering judgment against Plaintiffs on all remaining Claims.[3/] That judgment was appealed to the Ninth Circuit.[4/]

In a published decision, the Ninth Circuit reversed the judgment as to the (Second) ERISA fiduciary claim, affirmed the judgment as to the (Third) collective bargaining claim, and reversed the award of attorney fees to Defendants. _Trustees of the Southern California Bakery Drivers Security Fund v. Middleton_, 474 F.3d 642 (9th Cir.), *cert. denied*, 128 S.Ct. 378 (2007).

In particular, the Ninth Circuit held:

> "[T]hat South Bay Teamsters was an ERISA fiduciary of the plan assets of Bakery Drivers, and that it breached its fiduciary duties with respect to those assets. South Bay Teamsters exercised "control respecting management or disposition of [the Bakery Drivers Security Fund] assets," 29 U.S.C. § 1002(21)(A), by receiving payment or assets from Bakery Drivers that were

---

3/ I.e., this was the Second Claim for ERISA fiduciary breach, and the Third Claim for breach of the collective bargaining agreements.

4/ There are two docket numbers in the Ninth Circuit because a separate, related, appeal was made from the Order granting attorney fees to Defendants.

contributed on behalf of plan participants and then placing those assets into its fund over which it had authority, inter alia, to write checks. . . . Moreover, where, as here, the exclusion in § 1101(b)(2) is inapplicable, all assets paid-in are treated as 'plan assets' and an entity that takes 'actions in regard to their management and disposition must be judged against ERISA's fiduciary standards." 474 F.3d 642, 646, *quoting from* *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 106, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (citations omitted).

* * *

"Given that South Bay Teamsters had a fiduciary duty over plan assets, we conclude that it breached its duties under ERISA by failing to apply the surplus funds for the benefit of Bakery Drivers Security Fund participants. . . . We hold that South Bay Teamsters is liable to Bakery Drivers for breaching its fiduciary duties under ERISA. Counsel for the participants has suggested that certain remedies other than the return of surplus funds may be appropriate. Accordingly, we remand to the district court so that it may determine the appropriate remedy." Id. at 646-647.

In sum, the Ninth Circuit did "reverse the district court's decision granting summary judgment as to the ERISA fiduciary claim, affirm summary judgment as to the breach of collective bargaining agreements claim, reverse the award of attorneys' fees to South Bay Teamsters, and remand to the district court for further proceedings not inconsistent with this opinion." Id. at 647. Mandate was issued to the District Court, along with an award of $511.60 costs to the Bakery Drivers Fund.

/ / /

/ / /

## III. ARGUMENT

### A. THE ONLY ISSUE ON REMAND IS TO DETERMINE THE APPROPRIATE REMEDY FOR THE BREACH OF FIDUCIARY DUTIES BY DEFENDANTS

This case thus comes to this Court on Mandate from the Ninth Circuit, remanding the case for specific purposes. "When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Firth v. United States*, 554 F.2d 990, 993 (9th Cir.1977). "On remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1435 -1436 (9th Cir. 1984).

Defendants have attempted, on remand, to raise issues which were expressly or implicitly decided by the Ninth Circuit, such as the statue of limitations, laches, waiver and unclean hands. None of these issues are open for consideration here. "A district court, upon receiving the mandate of an appellate court 'cannot vary it or examine it for any other purpose than execution.'" *U.S. v. Cote*, 51 F.3d 178, 181 -182 (9th Cir. 1995), *quoting*, *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895). Those issues were "finally settled" and are no longer at issue. *See Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activists*, 422 F.3d 949, 966 -967 (9th Cir. 2005).

Specifically, the Ninth Circuit found that "all assets paid-in" which is the $2,753,642.00 paid from the Bakery Drivers to the South Bay Fund, "are treated as 'plan assets'" of the Bakery Drivers Fund. 474 F.3d 642, 646. The "South Bay Teamsters was an ERISA fiduciary of the plan assets of Bakery Drivers and that it breached its fiduciary duties with respect to those assets." Id.

The Ninth Circuit has already decided that the breach occurred "by failing to apply the surplus funds for the benefit of Bakery Drivers Security Fund participants." Id. This occurred when Defendants decided, at a meeting of the South Bay Trustees on March 20, 2002, to refuse to use the assets for the benefit of Bakery Driver participants. [Stipulation of Facts ¶ 17]. Arguably, the time period was tolled until June 2002, when the Security Fund Trustees were first informed of this decision. [Stipulation of Facts ¶ 18]. In any case, this action was brought within the time period of ERISA § 413, 29 U.S.C. § 1113.

Since the Ninth Circuit has already decided "that South Bay Teamsters is liable to Bakery Drivers for breaching its fiduciary duties under ERISA" id. at 647, any issue going to South Bay's liability may not be considered here. The Ninth Circuit was clear that the only issue on remand to this Court was "so that it may determine the appropriate remedy." Id. Only issues going to the "appropriate remedy" may be considered here.

The remedies available to the Court for a breach of fiduciary duty are set forth in ERISA § 409(a), 29 U.S.C. § 1109(a):

> "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

The only question now before the Court is to determine the appropriate remedy (or remedies) under ERISA § 409(a).

B. THE ASSETS OF THE BAKERY DRIVERS SHOULD BE PLACED IN TRUST, OUT OF THE CONTROL OF DEFENDANTS

The Ninth Circuit has already established that "all assets paid-in are treated as 'plan assets'" of the Bakery Drivers Fund. 474 F.3d 642, 646. Specifically, this is the $2,753,642.00 "paid-in" from the Bakery Drivers to the South Bay Fund. We acknowledge that $770,768.19 was paid from those funds for benefits to Bakery Driver participants, and $220,304.92 was paid to SWA to administer those benefits. Therefore, there is a "surplus" of at least $1,762,568.89, which Defendants have refused to apply to the benefit of Bakery Driver participants. [Stipulation of Facts ¶¶ 10-12; Tonnancour Decl ¶¶ 11-13, and 19; Exhibit 54].[5/]

The first, and most appropriate remedy, is to take these assets of the Bakery Drivers Fund out of the hands of the breaching fiduciaries, and place them in a separate trust. Specifically, this is the $1,762,568.89 surplus funds. This remedy of placing a trust over the assets is not an assessment of damages, but a traditional equitable remedy available under ERISA § 409 "to restore to the plaintiff particular funds or property in the defendant's possession." *Great West Life & Annuity Ins.*

---

5/ Exhibit 54 is admissible as a summary of voluminous documents, under Rule 1006 of the Federal Rules of Evidence. The underlying records are the business records (monthly reports, invoices, claims and payments) of the administration of the Death Benefits by SWA. As agreed in the Stipulation of Facts (¶¶ 10-12), these are documents exchanged between the parties, through SWA. So, these underlying records are business records, excepted from the hearsay rule under Rule 803(6) of the Federal Rules of Evidence. As business records of both parties, they are equally available to both parties. In addition, Plaintiffs made them available to Defendants in this litigation. [Supp. Sackman Decl ¶¶ 3]. Exhibit 54 was created by agreement of the parties, in lieu of producing all of the underlying documents. [Id. at ¶ 2]. Under these circumstances, Exhibit 54 is admissible as a summary, under Fed. R. Ev. 1006. *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984) (audit report summarizing employer records admissible, to the extent it is based on those records).

Co. v. Knudson, 534 U.S. 204, 214, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). "A constructive trust is 'an equitable remedy compelling a person who has property to which he is not justly entitled to transfer it to the person entitled.'" Landwehr v. DuPree, 72 F.3d 726, 738 (9th Cir. 1995), *quoting from* United States v. Pegg, 782 F.2d 1498, 1499 (9th Cir.1986). It "is a remedy that would be available under traditional trust law to enforce the traditional trust principle that a fiduciary may not profit by his breach of the duty of loyalty." *Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1417 (9th Cir. 1988). *See also*, *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 126 S.Ct. 1869, 164 L.Ed.2d 612 (2006) (under equitable powers of a court grantee by ERISA's civil remedies, equitable trust or lien may be placed on property, even if the property was not in existence at time of original agreement). This remedy is consistent with one of the basic principles of ERISA, that assets of an ERISA plan are required to be kept in trust. ERISA § 403(a), 29 U.S.C. § 1103(a).

We recognize that "Counsel for the participants has suggested that certain remedies other than the return of the surplus funds may be appropriate." 474 F.3d. 642, 647. For example, the South Bay Trust could continue to pay benefits for Bakery Driver participants, out of those assets. However, given that it has already been found that Defendants breached their fiduciary duties, any remedy which left Bakery Drivers assets under the control of Defendants would not be appropriate.[6/] As of this moment, Defendants still have control over the assets of the Bakery Drivers, and are thus still fiduciaries as to those assets. That status should end. The remedy we suggest here would be in effect the final remedy specifically mentioned in ERISA § 409(a) - removing Defendants as fiduciaries of the Bakery Drivers assets.

---

6/ Plaintiffs also have doubts whether Defendants could fund such benefits over the long-term.

159595.1

As to the details of what we shall refer to here as the "Separate Trust," we suggest that it be administered by SWA, who is already the administrator and fiduciary as to the Bakery Drivers Fund. It should be placed in some account which has a reasonable return. The most important aspect, though, is that Defendants have no control over the Separate Trust.

C. DEFENDANTS SHOULD BE ORDERED TO PROVIDE AN ACCOUNTING OF THEIR HANDLING OF PLAINTIFFS' ASSETS, TO A MASTER APPOINTED BY THE COURT

Once the Separate Trust is established, the next appropriate remedy is to require Defendants to provide an Accounting of the Bakery Drivers assets in their hands. Defendants have had sole control of these assets of the Bakery Drivers, without applying them to the benefit of Bakery Driver participants, for at least seven years. What profits have they earned (or failed to earn) from those assets in that time? "A fiduciary has no legal right to retain profits obtained through breach of the duty of loyalty to an ERISA plan." *Amalgamated Clothing*, *supra*, 861 F.2d 1406, 1418. It is appropriate that they provide an Accounting of the profits from the assets of the Bakery Drivers. "The fiduciary accounting for profits was traditionally an equitable claim." I Dan. B. Dobbs, Dobbs Law of Remedies: Damages-Equity-Jurisdiction § 4.3(5) at 613 (2nd Ed. 1993).

On the other hand, Defendants have claimed that they incurred expenses beyond those we have used in the calculation of the surplus of $1,762,568.89. The appropriate forum to decide those issues is not in summary judgment or at trial, but in an accounting by a special master, appointed pursuant to Fed. R. Civ. P. 53, since it will involve complicated and highly technical matters of tracing and accounting of the assets in the hands of Defendants. *See Horn v. McQueen*, 215 F.Supp.2d 867, 890 (W.D.Ky.,2002) (referring computation of damages after finding ERISA

fiduciary breach, to special master under Fed. R. Civ. P. 53).

In conducting such an accounting, the burden of proof to show what happened with the assets must rest with Defendants. *See* _Kim v. Fujikawa_, 871 F.2d 1427, 1430-31 (9th Cir.1989) ("court should resolve doubts in favor of the plaintiffs"). Defendants cannot proffer evidence of their own accounting to defeat summary judgment, claiming it creates an issue of fact as to damages. This was the holding of the Ninth Circuit in _Patelco Credit Union v. Sahni_, 262 F.3d 897 (9th Cir. 2001). The defendant there also claimed that "a hearing was necessary to resolve factual issues about what funds he spent for the benefit of" the plan there. 262 F.3d 897, 912. Citing _Kim v. Fujikawa_, the Court held that it was defendant's burden, as the breaching fiduciary, to account for the proceeds, and his proferred accounting did not create an issue of fact to defeat summary judgment. Id.

All other Circuits we have found addressing this issue are in accord; i.e., that the burden is on the breaching fiduciary to account for the disposition of assets under ERISA. *See* _Secretary of U.S. Dept. of Labor v. Gilley_, 290 F.3d 827, 830 (6th Cir. 2002) ("to the extent that there is any ambiguity in determining the amount of loss in an ERISA action, the uncertainty should be resolved against the breaching fiduciary"); _Roth v. Sawyer-Cleator Lumber Co._, 61 F.3d 599, 602 (8th Cir.1995) ("To the extent that there are ambiguities in determining loss, we resolve them against the trustee in breach."); _Donovan v. Bierwirth_, 754 F.2d 1049, 1056 (2d Cir.1985) ("once a breach of trust is established, uncertainties in fixing damages will be resolved against the wrongdoer.")

Defendants should therefore be ordered to provide an Accounting of the assets of Bakery Drivers Funds which were under their control. They should be ordered to provide all information and documents necessary to complete the accounting. The Special Master should then be given the task of determining: 1) any reasonable charges for administrative expenses claimed by Defendants, other than the payments to SWA already accounted for; 2) the actual investment gain or loss on the Bakery

Driver assets from May 31, 2001 (when the last Death Benefit Agreement terminated) to the date the funds are placed in the Separate Trust; and 3) the reasonable investment gain or loss on these funds for this period.

The Special Master can be compensated from the Separate Trust. However, that compensation would be taxable as costs against Defendants, pursuant to Local Rules 53-2 and 54-4.10. The report of the Special Master can be reviewed under the procedures of Rule 53, to determine the final amount of personal liability, as discussed below.

## D. BASED ON THE ACCOUNTING, JUDGMENT SHOULD BE ENTERED FOR PERSONAL LIABILITY OF THE DEFENDANTS

Section 409(a) of ERISA also provides that a breaching fiduciary "shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary . . . ." 29 U.S.C. § 1109(a). The determination of the amount of personal liability will depend on the results of the Accounting.

Specifically, the amount of personal liability would be the investment gain which was (or should have been) achieved from the assets in the hands of the Defendants, less any reasonable expenses Defendants incurred, as found by the Special Master and reviewed by this Court. If the profits exceed the expenses, then Defendants must be held personally liable for the difference. In the unlikely event that the expenses exceed the profits which were (or should have been) achieved, that difference can be refunded to Defendants from the Separate Trust. In either case, final judgment can be entered on the results of the Accounting. The Court's jurisdiction over the Separate Trust would also end, and the remaining funds could be turned back to the Bakery Drivers Trustees, subject only to their own plan

provisions and fiduciary duties.

Any motion for fees, or Bill of Costs, would follow this final Judgment, in accordance with Local Rules 54-3 through 54-12. The costs of the Special Master could be recovered through the Bill of Costs, pursuant to Local Rule 53-2.

## IV. CONCLUSION

The only issue here on remand is the "appropriate remedy" for Defendants' fiduciary breach, under ERISA § 409(a), 29 U.S.C. § 1109(a). No other issue may be considered here. The most "appropriate remedy" in this case is:

1) Establishing a Separate Trust of the $1,762,568.89 assets of the Bakery Drivers which are still under the Defendants' control;

2) An Accounting of Defendants' use and profits from these assets, to be conducted by a Special Master, pursuant to Fed. R. Civ. P. 53; and finally,

3) Personal liability of the balance, as determined by the Accounting, assessed as final monetary judgment against the Defendants.

A Proposed Interlocutory Judgment to that effect is lodged herewith. We respectfully suggested that it be entered, as the most "appropriate" remedy for Defendants' fiduciary breach.

Respectfully Submitted,

DATED: July 11, 2008

HIRSCH ADELL and
J. DAVID SACKMAN, Members of
REICH, ADELL & CVITAN
A Professional Law Corporation

By: ________/S/________________________
J. DAVID SACKMAN
Attorneys for Plaintiffs