1  HIRSCH ADELL (CSB 34208) and
   J. DAVID SACKMAN (CSB 106703) Members of
2  REICH, ADELL & CVITAN
   A Professional Law Corporation
3  3550 Wilshire Blvd., Suite 2000
   Los Angeles, California 90010
4  Telephone: (213) 386-3860
   Facsimile: (213) 386-5583
5  email: jds@rac-law.com

6  Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11 TRUSTEES OF THE SOUTHERN          )  CASE NO. CV 03-5550 R (RZx)
   CALIFORNIA BAKERY DRIVERS         )
12 SECURITY FUND; DIRK               )  PLAINTIFFS' MEMORANDUM OF
   GEERSEN,                          )  POINTS AND AUTHORITIES IN
13                                   )  OPPOSITION TO DEFENDANTS'
              Plaintiffs,            )  MOTION FOR SUMMARY JUDGMENT
14                                   )
          vs.                        )  Pretrial Date: August 11, 2008
15                                   )  Trial Date: August 26, 2008
   RICK MIDDLETON; BOB DOSS;         )
16 RONN ENGLISH; PERRI NEWELL;       )
   SOUTH BAY TEAMSTERS AND           )
17 EMPLOYERS HEALTH AND              )  Date:  August 4, 2008
   WELFARE AND RELATED               )  Time: 10:00 a.m.
18 BENEFITS TRUST FUND,              )  Ctrm:  8 (Spring St.)
                                     )
19            Defendants.            )
                                     )
20 _____  )

21

22        Plaintiffs OPPOSE the motion by Defendants for Summary Judgment.  This

23 Opposition is based upon the Mandate from the Court of Appeals, the following

24 Memorandum of Points and Authorities, the accompanying Statement of Genuine

25 Issues and Second Request for Judicial Notice, all of the papers filed by Plaintiffs in

26 support of their own motion for summary judgment, all of the papers and pleadings

27 in this case, and such further evidence and argument as may be presented at the

28 hearing.

1

2

# TABLE OF CONTENTS

3

4

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5

II. SUMMARY OF FACTS AND PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . 2

6

7

III.     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8

         A.     THE MOTION SHOULD BE SUMMARILY DISMISSED
BECAUSE IT WAS FILED AND SERVED AFTER

9

                   BUSINESS HOURS, TO THE PREJUDICE OF
                   PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

10

11

         B.     DEFENDANTS' ENTIRE MOTION IS BEYOND THE MANDATE
FROM THE COURT OF APPEALS AND SO SHOULD NOT BE

12

                   CONSIDERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

13

         C.     EVEN IF THE STATUTE OF LIMITATION DEFENSE
WAS NOT EXCLUDED BY THE MANDATE, IT HAS

14

                   NO MERIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15

16

         D.     EVEN IF THE LACHES AND UNCLEAN HANDS
DEFENSES WERE NOT EXCLUDED BY THE MANDATE,

17

                   THEY HAVE NO MERIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

4
*Brock v. Nellis,*
    809 F.2d 753, (11th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
5

*Coleman Co. v. Holly Mfg. Co.,*
6
    269 F.2d 660 (9th Cir.1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

7
*Corp. v. Gen. Am. Life Ins. Co.,*
    107 F.3d 1415 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
8

*Ellenburg v. Brockway, Inc.,*
9
    763 F.2d 1091 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 16

10
*Firth v. United States*,
    554 F.2d 990 (9th Cir.1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
11

12
*Herman v. South Carolina Nat. Bank,*
    140 F.3d 1413 (11th Cir.), 1998) *cert. denied sub. nom*
13
    *Fickling v. Herman,* 525 U.S. 1140 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

14
*Ingle v. Circuit City*, 408 F.2d 592 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

15
*In re Sanford Fork & Tool Co.,*
    160 U.S. 247, 16 S. Ct. 291, 40 L. Ed. 414 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . .  7

16
*IT Corp. v. Gen. Am. Life Ins. Co.,*
    107 F.3d 1415 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
17

18
*Kim v. Fujikawa,*
    871 F.2d 1427 (9th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

19
*King v. Giurbino,*
    538 F. Supp. 2d 1269 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
20

21
*Massachusetts Mut. Life Ins. v. Russell,*
    473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) . . . . . . . . . . . . . . . . . . . . . . . 13-14

22
*Patelco Credit Union v. Sahni,*
    262 F.3d 897 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
23

24
*Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activists,*
    422 F.3d 949 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 7

25
*Salovaara v. Eckert,*
    222 F.3d 19 (2d Cir., 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
26

27
*Sinett Inc. v. Blairex Laboratories, Inc.,*
    909 F.2d 253 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

28
*Stevens v. F/V Bonnie Doon,*
    731 F.2d 1433 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

**TABLE OF AUTHORITIES (con't)**

*Trustees For Alaska Laborers-Construction Industry Health and Sec. Fund v. Ferrell*,
812 F.2d 512 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Trustees of Carpenters and Millwrights Health Ben. Trust Fund*
*v. Lillard & Clark Const. Co., Inc.*,
780 F.Supp. 738 (D. Colo., 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Trustees of the Southern California Bakery Drivers Security Fund v. Middleton*,
474 F.3d 642 (9th Cir.), *cert. denied*, 128 S.Ct. 378 (2007) . . . . . . . . . . . . . . . . . . . . passim

*U.S. v. Cote*,
51 F.3d 178 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Waller v. Blue Cross of California*,
32 F.3d 1337 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**FEDERAL STATUTES**

Employee Retirement Income Security Act (ERISA)

§ 2(c), 29 U.S.C. § 1001(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

§ 3(1), 29 U.S.C. §§ 1002(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 3(21)(A), 29 U.S.C. § 1002(21)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

§ 3(37)(A) 29 U.S.C. § 1002(37)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

§ 403(a), 29 U.S.C. § 1103(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

§ 404(a)(1), 29 U.S.C. §1104(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 10

§ 405(a), 29 U.S.C. § 1105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

§ 409, 29 U.S.C. § 1109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 13

§ 409(a), 29 U.S.C. § 1109(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

§ 410(a), 29 U.S.C. § 1110(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

§ 413, 29 U.S.C. § 1113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 14

§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

§ 502(a)(2), 29 U.S.C. § 1132(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1

**TABLE OF AUTHORITIES (con't)**

2

3

§ 502(a)(2), 29 U.S.C. §1132(a)(2)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

4

§ 502(g)(2), 29 U.S.C.§ 1132(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

5

§ 515, 29 U.S.C.  § 1145  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

6

7   Federal Rules of Civil Procedure

8   Fed. R. Civ. P. 53   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## I.  INTRODUCTION

3

4      This case comes to this Court on remand from the Ninth Circuit.  In a

5 published opinion,  _Trustees of the Southern California Bakery Drivers Security_

6 _Fund v. Middleton_, 474 F.3d 642 (9th Cir.), _cert. denied_, 128 S.Ct. 378 (2007), it was

7 found that Defendants were liable for violation of fiduciary duties under the

8 Employee Retirement Income Security Act (ERISA) § 404(a)(1), 29 U.S.C. §

9 1104(a)(1).  This case was remanded "to the district court so that it may determine

10 the appropriate remedy" for this breach of fiduciary duty.  474 F.3d 642, 647.

11      Consistent with the limited purpose of the remand, Plaintiffs have filed a

12 Motion for Summary Judgment on the sole issue of the "appropriate remedy."

13 Defendants, however, have filed their own cross-Motion for Summary Judgment,

14 which re-argues all of the issues already decided on appeal.  None of the issues they

15 raise are allowed by the Mandate of the Court of Appeals.

16      Whether or not Defendants agree with the decision, it has been finally decided

17 (after exhausting appeals up to the Supreme Court) that they are holding assets

18 belonging to Plaintiffs, and that they have breached their fiduciary duties towards

19 those assets.  The issues they raise here, of the statute of limitations, laches and

20 "unclean hands" are encompassed in that decision, and may not be revisited.  In any

21 case, these defenses lack any merit.  The basic fallacy of Defendants' argument is

22 that they mistake the "breach" which started any statute of limitations to run.  It was

23 not the acts which created the fiduciary relationship - taking control of the assets -

24 but the act (or omission) of  "failing to apply the surplus funds for the benefit of"

25 Plaintiffs' participants.  Id. at 646-647.  That did not occur until within three years of

26 filing this lawsuit.

27      Defendants' motion should be denied.  The focus of these proceedings on

28 remand should be solely to determine the "appropriate remedy" for the breach of

fiduciary duties already established.

II. <u>SUMMARY OF FACTS AND PROCEEDINGS</u>

The facts and history of this case have been extensively described in the opening briefs for both of these cross-motions.  We will only recap here the facts and conclusions of law, as found by the Ninth Circuit in its decision.

"This case involves a dispute between the trustees of two employee benefit plans over an agreement in which one plan was to provide certain benefits to plan participants of the other plan."  474 F.3d 642, 647.  On the one hand is the Southern California Bakery Drivers Security Fund (referred to as the "Bakery Drivers Fund" or "Security Fund").  On the other hand is the South Bay Teamsters and Employers Health and Welfare and Related Benefits Trust Fund (South Bay Trust).  Each is an employee welfare benefit plan, and a multi-employer plan within the meaning of ERISA §§ 3(1) and 3(37)(A), 29 U.S.C. §§ 1002(1) and 1002(37)(A), and each was created pursuant to various collective bargaining agreements.  [Stipulation of Facts ¶¶ 1-2].  Plaintiffs Trustees of the Southern California Bakery Drivers Security Fund (Bakery Drivers Trustees) are the trustees and fiduciaries of the Southern California Bakery Drivers Security Fund (Bakery Drivers Fund), and appear in their fiduciary capacity as such.  Defendants Rick Middleton; Bob Doss; Ronn English; Perri Newell (South Bay Trustees), are each trustees and fiduciaries of the South Bay Trust. [Stipulation of Facts ¶ 3].

"In a Trust-to-Trust agreement [also referred to here as the "Death Benefit Agreement"], Bakery Drivers contracted to pay $5.50 per month for each active fund participant to South Bay Teamsters in exchange for death and related benefits amounting to $10,000 in the event of death and $5,000 or $10,000 in the event of qualifying dismemberment. After a series of Trust-to-Trust agreements continuing the relationship, the parties terminated their agreement as of May 31, 2001.  Bakery Drivers allege that over the

course of the contract, plan participants paid a total of $2,753,642.00 to South Bay Teamsters, while the total amount of claims paid to plan participants was $770,768.19 and administrative expenses totaled $220,304.92."   474 F.3d at 643.

During the course of these agreements, it is not disputed that the parties treated the relationship as if South Bay was providing "insurance-like benefits" to Bakery Driver participants. Id. at 645.  Nevertheless, "South Bay Teamsters does not purport to constitute such an organization, and nothing in the record indicates that it is 'qualified to do business in a State' [as an insurer]." Id.

Instead, it has been decided that "South Bay Teamsters exercised 'control respecting management or disposition of [the Bakery Drivers Security Fund] assets,' 29 U.S.C. § 1002(21)(A), by receiving payment or assets from Bakery Drivers that were contributed on behalf of plan participants and then placing those assets into its fund over which it had authority, inter alia, to write checks." Id. at 646, citing IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1421 (9th Cir.1997).  These were the acts which created the fiduciary relationship.

The fiduciary duties which Defendants thus undertook was to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and— (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  There is no allegation and no dispute that Defendants did so, during the term of the Death Benefit Agreements.  They paid claims of Bakery Drivers participants in accordance with the written terms of the plan, and provided for administrative expenses.  [Stipulation of Facts ¶ 11; Tonnancour Decl ¶ 11-13].  The assets which were not used for benefits or administrative expenses, Defendants held in trust, as they were required to do by ERISA § 403(a), 29 U.S.C. § 1103(a).

1   The breach of fiduciary duty did not occur until *after* the Death Benefit
2   Agreements were terminated:

3

4   "On January 10, 2002, Bakery Drivers sent South Bay Teamsters a letter
5   requesting the surplus funds paid by plan participants-namely, the
6   $1,762,568.89 difference between the amounts paid-in less benefits received
7   and administrative expenses. South Bay Teamsters refused the request on May
8   31, 2002." 474 F.3d at 644.

9

10  *This* was the act (or omission) by which Defendants breached their fiduciary
11  duties.  Thus, "we conclude that it breached its duties under ERISA by failing to
12  apply the surplus funds for the benefit of Bakery Drivers Security Fund participants."
13  Id. at 646.
14       The original complaint was filed on August 4, 2003, alleging three Claims
15  against Defendants.  The sum result of these proceedings is that only the Second
16  Claim is at issue here: for breach of the fiduciary duties owed by the South Bay
17  Trustees, as to Bakery Drivers Fund assets they exercised control over, under ERISA
18  § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief under ERISA § 409, 29 U.S.C. § 1109.
19       As described above, the Ninth Circuit ultimately found Defendants liable on
20  this Second Claim, for breaching their fiduciary duties in the refusal to apply the
21  surplus after the agreements terminated, to the benefit of Bakery Driver participants.
22  The Ninth Circuit denied a Petition for Rehearing, and the Supreme Court denied a
23  Petition for Certiorari.  128 S.Ct. 378 (2007).   This case thus came back on "remand
24  to the district court so that it may determine the appropriate remedy."  474 F.3d 642,
25  647.  Mandate was issued to the District Court, along with an award of $511.60 costs
26  to the Bakery Drivers Fund.

27

28

III.  <u>ARGUMENT</u>

A.   THE MOTION SHOULD BE SUMMARILY DISMISSED BECAUSE IT
     WAS FILED AND SERVED AFTER BUSINESS HOURS, TO THE
     PREJUDICE OF PLAINTIFFS

Pursuant to Local Rule 6-1, motion papers must be served 21 days before the hearing date.  In this case, the deadline would be by Monday, July 14, 2008.  As shown by the docket in this case, most of Defendants' papers for this motion were e-filed, and a "Notice of Electronic Filing" (NEF) generated *after 5pm* on Monday, July 14, 2008.  According to General Order 08-02 of this Court, such service is complete upon transmission of the NEF.  General Order 08-02 § VII.A; *see also* para. 9 of the Notice to Counsel of Judge Manuel L. Real.

Service after-hours by email should be treated no differently than personal service after hours.  Slipping papers under the door of a closed office, after hours,  is not considered effective service on that day.  *See  Sinett Inc. v. Blairex Laboratories, Inc.*, 909 F.2d 253, 254 (7th Cir. 1990).  At best, it should be considered as service on the next business day, which in this case would be in violation of Local Rules 6-1 and 56-1 (papers required with summary judgment motion).

Plaintiffs suffered real prejudice from this delay.  Because of this late service, counsel had significantly less time to respond to the motion. The prejudice of late service is particularly acute for summary judgment motions, which require more time and work to respond to than other motions.  Nearly all of Defendants' evidence in support of their motion arrived after-hours.[1]

Defendants' motion should be summarily denied for failure to file and serve the papers in time, to the prejudice of Plaintiffs.

---

[1]  This included Docket No.s 124, 125 and 126.

B.    <u>DEFENDANTS' ENTIRE MOTION IS BEYOND THE MANDATE FROM THE COURT OF APPEALS AND SO SHOULD NOT BE CONSIDERED AT ALL</u>

In this motion, Defendants are trying to re-litigate issues resolved in the Ninth Circuit.  They also lost a petition for rehearing before the Ninth Circuit, and a petition for certiorari to the Supreme Court.  Yet they still insist on beating a dead (and buried) horse by arguing the same issues here.

"When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." <u>Firth v. United States</u>, 554 F.2d 990, 993 (9th Cir.1977).  "On remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." <u>Stevens v. F/V Bonnie Doon</u>, 731 F.2d 1433, 1435 -1436 (9th Cir. 1984).   "A district court, upon receiving the mandate of an appellate court 'cannot vary it or examine it for any other purpose than execution.'" <u>U.S. v. Cote</u>,  51 F.3d 178, 181 -182 (9th Cir. 1995), *quoting, <u>In re Sanford Fork & Tool Co.</u>*, 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895).

Here, the Ninth Circuit found that "all assets paid-in" which is the $2,753,642.00 paid from the Bakery Drivers to the South Bay Fund, "are treated as 'plan assets'" of the Bakery Drivers Fund.  474 F.3d 642, 646.  The Court found that "South Bay Teamsters was an ERISA fiduciary of the plan assets of Bakery Drivers and that it breached its fiduciary duties with respect to those assets." <u>Id</u>.  All of those issues were "finally settled" and are no longer at issue here. *See <u>Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activists</u>*,  422 F.3d 949, 966 -967 (9th Cir. 2005).

1      Defendants' defenses of the statute of limitations, laches, and "unclean hands" are all precluded by the Ninth Circuit decision.   Since the Ninth Circuit has already decided "that South Bay Teamsters is liable to Bakery Drivers for breaching its fiduciary duties under ERISA" <u>id</u>. at 647, any issue going to South Bay's liability may not be considered here.  The Ninth Circuit was clear that the only issue on remand to this Court was "so that it may determine the appropriate remedy."  <u>Id</u>.  Only issues going to the "appropriate remedy" may be considered here.

      Defendants argue that this comes within an exception to the "Law of the Case" rule.  However, it is not the "Law of the Case" but the "Rule of Mandate" which precludes their motion here.  "The rule of mandate is similar to, but broader than, the law of the case doctrine." <u>Cote</u>, *supra*, 51 F.3d 178, 181.  Thus, " a district court could not revisit its already final determinations unless the mandate allowed it." <u>Id</u>.  It is well established that "Matters that were adjudicated on the first appeal are no longer open to re-examination." <u>Coleman Co. v. Holly Mfg. Co.</u>, 269 F.2d 660, 664 (9th Cir.1959).   "Add another half-century, and the same is true." <u>Planned Parenthood</u>, 422 F.3d 949, 966 (*quoting* <u>Coleman</u>).

      Even viewed under the more flexible standard of the "Law of the Case," Defendants cannot escape from the decision here.  This Court has only recognized extremely limited exceptions to departing from the Law of the Case: "where (1) the first decision was clearly erroneous; (2) an intervening change in the law occurred; (3) the evidence on remand was substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result." <u>King v. Giurbino</u>, 538 F.Supp.2d 1269, 1274 (C.D. Cal. 2008), *quoting from* <u>Ingle v. Circuit City</u>, 408 F.2d 592, 594 (9th Cir. 2005).

      However much Defendants disagree with the Ninth Circuit decision, that does not make it "clearly erroneous."  They already tried, and failed, to argue the decision was "clearly erroneous" by petitioning for rehearing and petitioning for certiorari.

      There is no "intervening change in the law" that Defendants can point to.  The

evidence on remand is exactly the same evidence presented to the District Court, and thus the Ninth Circuit, on the first round.  There is no other "changed circumstances" and the only "manifest injustice" exists in the minds of Defendants.

This entire motion should be denied as beyond the mandate of the Court of Appeals.  The only issue left on remand is to determine the "appropriate remedy" for the breach of fiduciary duty, under ERISA § 409(a), 29 U.S.C. § 1109(a).  That is addressed in Plaintiffs' motion.

C.      EVEN IF THE STATUTE OF LIMITATIONS DEFENSE WAS NOT
        EXCLUDED BY THE MANDATE, IT HAS NO MERIT

Defendants' statute of limitations defense is not within the mandate from the Court of Appeals, and so should not be considered at all.  If it is to be considered at all, it is clear there is no merit to this defense.

The statute of limitations for ERISA fiduciary breaches is:

"(1) six years after

        "(A) the date of the last action which constituted a part of the breach or
        violation, or

        "(B) in the case of an omission the latest date on which the fiduciary
        could have cured the breach or violation, or

"(2) three years after the earliest date on which the plaintiff had actual
knowledge of the breach or violation;

"except that in the case of fraud or concealment, such action may be
commenced not later than six years after the date of discovery of such breach
or violation. "  ERISA § 413, 29 U.S.C. §1113.

Note that there are two periods involved, one running from the *last act* or

1    omission which constituted the breach, and one running from *actual knowledge* of

2    the breach.  Defendants have confused the two, arguing that the statute runs from

3    "when the breach *first* occurs." [Defendants' Memorandum at 17].  The statute says

4    it actually runs from the "*last* action" or the "*latest* date" on which the breach occurs,

5    not the first date.  What Defendants refer to is the optional provision running from

6    the "earliest date" of "actual knowledge" of the breach.[2/]

7           The critical question, then, is *what constituted the breach of fiduciary duty*?

8    Even if we measure the limitations period from the "earliest knowledge" there can be

9    no "knowledge" until the breach actually occurs.

10          The cornerstone of Defendants' argument, and its weakest point, is their

11   assertion that the breach occurred "immediately upon entering into the Trust-to-Trust

12   Agreements" or "upon receipt of the payments or contributions" from the Bakery

13   Drivers. [Defendants' Memorandum at p. 15].  However, what the Ninth Circuit held

14   was that South Bay "breached its duties under ERISA by failing to apply the surplus

15   funds for the benefit of Bakery Drivers Security Fund participants."  474 F.3d 642,

16   646.   That did not occur until March 2002, when the South Bay Trustees made the

17   affirmative decision *not* to apply these assets for the benefit of the Bakery Driver

18   participants, by refusing the Bakery Drivers' request to return the funds.  [Stipulation

19   of Facts ¶ 17]. The Bakery Driver Trustees did not obtain actual knowledge of this

20   fact until the letter dated May 31, 2002, informing them of this decision.  [Stipulation

21   of Facts ¶ 18; Declaration of Hirsch Adell (Adell Decl), Ex. 48].

22          Plaintiffs never alleged, and the Ninth Circuit did not find, that Defendants

23   breached their duty simply by entering into the Death Benefit Agreement.  Plaintiffs

24   never alleged, and the Ninth Circuit did not find, that Defendants breached their duty

25

26   _____

27   [2/]  Note also that the statute refers to "actual knowlege," not imputed or constructive
     knowledge.  *See Waller v. Blue Cross of California*,  32 F.3d 1337, 1341 (9th Cir.

28   1994) ("We decline to equate knowledge of the purchase of annuities in this case
     with actual knowledge of the alleged breach of fiduciary duty.")

simply by receiving money from the Bakery Drivers Fund.  Defendants confuse the acts by which they *became* fiduciaries over the assets, with the acts by which they *breached* their duty toward those assets.  By entering into the Death Benefit Agreements and assuming control over the money transferred from the Bakery Drivers, Defendants became fiduciaries as to those assets, as found by the Ninth Circuit.[3/]

The fiduciary duties which each of the Defendants undertook was to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—  (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."  ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  During the 14 years that the Death Benefit Agreements remained in effect, Plaintiffs do not allege that Defendants breached any of these duties.  They paid claims of Bakery Drivers participants in accordance with the written terms of the plan, and provided for administrative expenses.  [Stipulation of Facts ¶ 11; Tonnancour Decl ¶ 11-13].  The assets which were not used for benefits or administrative expenses, Defendants held in trust, as they were required to do by ERISA § 403(a), 29 U.S.C. § 1103(a).  As Defendants themselves argue, "it is clear that South Bay Trust was acting and operating at all times during the tenure of the Trust-to-Trust Agreements in a manner consistent with ERISA multiemployer plan law and the DOL Advisory Opinion guidance regarding plan assets." [Defendants' Memorandum at p. 14].  Plaintiffs have never claimed otherwise.

Nor is the mere fact that they commingled funds a breach of fiduciary duty.  Again, Plaintiffs have not alleged, and the Ninth Circuit never found that this was a

---

[3/]  "South Bay Teamsters exercised 'control respecting management or disposition of [the Bakery Drivers Security Fund] assets,' 29 U.S.C. § 1002(21)(A), by receiving payment or assets from Bakery Drivers that were contributed on behalf of plan participants and then placing those assets into its fund over which it had authority, inter alia, to write checks." <u>Id</u>. at 646

breach of fiduciary duty.  Again, Defendants themselves argue that this could not be a breach: "as a matter of fundamental ERISA multiemployer plan law payments or contributions to a multiemployer plan made on behalf of a given group of participants are not required to be earmarked, applied or used solely for the benefit of those participants."  [Defendants' Memorandum at p. 14]. As long as Defendants were paying the claims, administering the benefits, and holding the remainder in trust, during the term of the agreements, Plaintiffs had no complaint and there could be no breach.

What *did* constitute a breach of fiduciary duty, as alleged by Plaintiffs and found by the Ninth Circuit, was "failing to apply the surplus funds for the benefit of Bakery Drivers Security Fund participants."  474 F.3d 642, 646.  That "surplus" as alleged by Plaintiffs and found by the Ninth Circuit, was the "difference between the amounts paid-in less benefits received and administrative expenses" *after termination* of the agreements.  Id. at 644.  This is what the Bakery Drivers specifically requested in Exhibit 44. [Stipulation of Facts ¶ 16].  This is what the Defendants refused to do at their meeting of March 20, 2002. [Stipulation of Facts ¶ 17].  This is what counsel for the South Bay Fund finally communicated to Bakery Drivers' counsel on May 31, 2002.  [Stipulation of Facts ¶ 18; Declaration of Hirsch Adell, Ex. 48].

The Bakery Drivers' complaint was filed on August 4, 2003.  This is well within both the three year period of "knowledge" (May 31, 2002) and six years from the "last act" which constituted the breach (May 31, 2001)[4/] or the "latest date on which the fiduciary could have cured the breach (March 20, 2002), under ERISA § 413.  There can be no question that the fiduciary breach claim was timely.

Defendants also seem to argue that the "damages" from their breach should be

_____

[4/]  This is the date on which the last Death Benefit Agreement terminated, and the South Bay Fund stopped paying benefits for Bakery Driver participants. [Stipulation of Facts ¶ 15].

limited to "surplus" generated only within three or six years from the filing of the complaint.  If accepted, this argument would give ERISA fiduciaries an incentive  to steal contrary to the fundamental purpose of ERISA.  Employee benefit funds, by their nature, contain assets paid in over long periods of time.  It is the very purpose of ERISA to protect "the accrued benefits of employees with significant periods of service, to meet minimum standards of funding," for the hard-earned money paid in for those employees over a long period of time.  ERISA § 2(c), 29 U.S.C. § 1001(c).

Following Defendants' logic, a fiduciary who steals plan assets built up over fourteen, twenty or fifty years, would only be liable for the stolen assets accrued over the last three or six years.  This would be a profitable state of the law for unscrupulous fiduciaries!

The assets over which Defendants assumed a fiduciary duty are "all assets paid-in" from the Bakery Drivers Fund.  474 F.3d 642, 646.  Specifically, this is the $2,753,642.00 "paid-in" from the Bakery Drivers to the South Bay Fund.  We acknowledge that $770,768.19 was paid from those funds for benefits to Bakery Driver participants, and $220,304.92 was paid to SWA to administer those benefits.  Therefore, the "surplus" still in the hands of Defendants, which they refuse to use for the benefit of Bakery Driver participants, is at least $1,762,568.89 [Stipulation of Facts ¶¶ 10-12; Tonnancour Decl ¶¶ 11-13, and 19; Exhibit 54].  This is the amount of Bakery Driver assets still in their hands, which they must make good.  If there is any dispute over this amount, it is the burden of Defendants, as the breaching fiduciaries, to account for the assets.  *See* *Patelco Credit Union v. Sahni*,  262 F.3d 897, 912 (9th Cir. 2001); *Kim v. Fujikawa*, 871 F.2d 1427, 1430-31 (9th Cir.1989).

/ / /

/ / /

/ / /

/ / /

1  D.    EVEN IF THE LACHES AND UNCLEAN HANDS DEFENSES WERE

2        NOT EXCLUDED BY THE MANDATE, THEY HAVE NO MERIT

3

4        Any defense to liability, including the laches and "unclean hands" defenses

5  asserted by Defendants here, are subsumed in the Ninth Circuit decision that

6  Defendants are liable for breach of fiduciary duty.  Such defenses should not be

7  considered at all here.  If they are, it is clear that they have no merit.

8        First of all, these defenses may not even be available in an action for breach of

9  ERISA fiduciary duty.  The cases cited by Defendants applying these defenses

10 involved other types of ERISA claims.[5/]  That such defenses are available for other

11 types of ERISA claims does not mean they are available for fiduciary breach claims,

12 under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109 and 1132(a)(2).  The nature

13 of a fiduciary breach claim under ERISA precludes such defenses.

14       As to laches, the Eleventh Circuit has specifically held that this is not an

15 available defense to ERISA fiduciary breach claims.   Contrasting the availability of

16 laches in Title VII claims, the Eleventh Circuit explained:

17

18       "In contrast [to Title VII], ERISA contains a detailed statute of

19       limitations for actions regarding certain fiduciary breaches and ERISA

20       violations. . . . Given the Supreme Court's mandate that the judiciary not

21       tamper with ERISA's enforcement scheme, *Massachusetts Mut. Life Ins.*

22       *v. Russell*, 473 U.S. 134, 147, 105 S.Ct. 3085, 3092-93, 87 L.Ed.2d 96

23

_____

24 [5/]  As to laches, Defendants cite *Trustees For Alaska Laborers-Construction*

25 *Industry Health and Sec. Fund v. Ferrell*, 812 F.2d 512 (9th Cir. 1987).  That was a

   suit to collect delinquent contributions, under ERISA §§ 502(g)(2) and 515, 29

26 U.S.C. §§ 1132(g)(2) and 1145.  As to "unclean hands" Defendants cite *Ellenburg v.*

27 *Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985).  That was a claim for benefits

   under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  Neither type of claim has a

28 statute of limitations specified in ERISA.

(1985), and our circuit's recognition of the importance of ERISA's time lines, _Brock v. Nellis_, 809 F.2d 753, 754 (11th Cir. 1987), the district court erred in extending the laches exception in Title VII to ERISA actions. _Herman v. South Carolina Nat. Bank_, 140 F.3d 1413, 1427 -1428 (C.A.11 (Ala.),1998), _cert. denied sub. nom._, _Fickling v. Herman_, 525 U.S. 1140 (1999). _See also_, _Trustees of Carpenters and Millwrights Health Ben. Trust Fund v. Lillard & Clark Const. Co., Inc._, 780 F.Supp. 738, 742 (D.Colo. 1990) ("Generally, when a claim is brought within the applicable statute of limitations, the defense of laches is unavailable.")

While the Ninth Circuit has not addressed this issue, we think the Eleventh Circuit's reasoning is sound. The breach of fiduciary duty, as opposed to other types of ERISA claims, has a specific statute of limitations written into the statute. ERISA § 413, 29 U.S.C. § 1113. A laches defense is also contrary to the stated public policy in ERISA § 410(a), 29 U.S.C. § 1110(a), that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." It is simply against the policy of ERISA to relieve a fiduciary from liability by either action or inaction on the part of others.

On the merits of the laches defense, it is based on the same erroneous concept of what their "breach" was, as the statute of limitations defense; i.e., that the breach occurred by entering into the Death Benefit or accepting the assets, so that Defendants relied on Plaintiffs' lack of complaints during the administration of those agreements. _See Ferrell_, _supra_, 812 F.2d 512, 518 (laches requires a showing that "there was inexcusable delay in the assertion of a known right and that the party asserting laches has been prejudiced.") But as we have already shown, there was no breach during the administration of the Death Benefit Agreements, and so there was

1   nothing for the Bakery Drivers to complain about.

2   When the Death Benefit Agreements were terminated, the Bakery Drivers did
3   ask for their assets back, within a year, and then filed this lawsuit within another
4   year.  In between those periods, there was a steady stream of correspondence
5   between the respective counsel for these funds, arguing over whether any assets were
6   due back.  Defendants cannot claim that they relied on any lack of complaint from
7   the Bakery Drivers, when they were actively pursuing this claim.

8   The "unclean hands" defense is also contrary to the public policy regarding
9   fiduciary obligations under ERISA.   An affirmative obligation is placed on
10   fiduciaries to remedy breaches by their co-fiduciaries.  One fiduciary may be liable
11   for the breaches of another fiduciary:

13   "(1) if he participates knowingly in, or knowingly undertakes to conceal, an
14   act or omission of such other fiduciary, knowing such act or omission is a
15   breach;
16   (2) if, by his failure to comply with section 1104 (a)(1) of this title in the
17   administration of his specific responsibilities which give rise to his status as a
18   fiduciary, he has enabled such other fiduciary to commit a breach; or
19   (3) if he has knowledge of a breach by such other fiduciary, unless he makes
20   reasonable efforts under the circumstances to remedy the breach."  ERISA §
21   405(a), 29 U.S.C. § 1105(a).

23   Allowing an "unclean hands" defense would be contrary to this purpose, and
24   discourage fiduciaries from reporting breaches by co-fiduciaries.  That defense
25   "requires that those seeking its protection shall have acted fairly and without fraud or
26   deceit as to the controversy in issue."  *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091,
27   1097 (9th Cir. 1985).  If one fiduciary had "dirty hands" with respect to the breach of
28   a co-fiduciary, he would be precluded from bringing the very action which ERISA §

159812.1

-15-

1  405(a) requires him to bring against his co-fiduciary.  Allowing the "unclean hands"

2  defense "would create a Hobson's choice for the fiduciary with a good faith belief

3  that his co-fiduciary has breached his duty." _Salovaara v. Eckert_,  222 F.3d 19, 31

4  (2nd Cir. 2000) (district court abused discretion in awarding fees against

5  unsuccessful claim of breach by co-fiduciary; imposing fees contrary to policy of

6  encouraging fiduciaries to report breaches by co-fiduciaries).

7         On the merits, the "unclean hands" defense is also based on the assumption

8  that the breach occurred during the administration of the Death Benefit Agreements,

9  and Plaintiffs failed to complain during that period.[6/]  Again, there was no breach

10  occurring then.  When the breach occurred after the termination of those agreements,

11  Plaintiffs promptly and aggressively pursued it.

12

13                          IV. CONCLUSION

14

15         The only issue here on remand is the "appropriate remedy" for Defendants'

16  fiduciary breach, under ERISA § 409(a), 29 U.S.C. § 1109(a).  All of the issues

17  raised by Defendants in this motion are precluded by the Mandate from the Ninth

18  Circuit, and should not be considered at all.  If they are considered, it is clear that

19  these defenses have no merit.  Defendants' motion should be denied.

20

21

_____

22  [6/]  Defendants also claim that there was something "unclean" in the fact that the
23  payments to the South Bay Fund were treated by the Bakery Drivers as expenses on
    their 5500 Forms, and not as assets.  As explained in the Declaration of Heidi Hagler,
24  these were treated the same way the Bakery Drivers treats similar payments to
25  insurance companies, when there is a claim for a refund at the end of the term: the
    premiums are treated as expenses, and the refund is not reported until it is received.
26  By the nature of such transactions, the amount of the "asset" in a refund cannot be
27  known until an accounting is made at the end of the period.  Even if this was not the
    correct method of reporting, should a claim to recover an asset of an ERISA fund be
28  barred because it was not reported properly?

1    Plaintiffs' motion should be granted.  The assets which have already been

2  determined to belong to the Bakery Drivers should be placed in a separate trust.

3  Defendants should be ordered to provide an accounting of the handling of those

4  assets in their hands.  We suggest this be done by a Special Master pursuant to Fed.

5  R. Civ. P. 53.  In such an accounting, the burden must be to show any legitimate

6  expenses on Defendants.  Defendants must be held personally liable for any loss

7  determined by the accounting.

8

9

10                                        Respectfully Submitted,

11

12  DATED: July 20, 2008                   HIRSCH ADELL and
                                           J. DAVID SACKMAN, Members of
13                                         REICH, ADELL & CVITAN
                                           A Professional Law Corporation
14

15                                         By: _____/S/_____
16                                                   J. DAVID SACKMAN
                                           Attorneys for Plaintiffs
17

18

19

20

21

22

23

24

25

26

27

28

159812.1

-17-