HIRSCH ADELL (CSB 34208) and
J. DAVID SACKMAN (CSB 106703) Members of
REICH, ADELL & CVITAN
A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010
Telephone: (213) 386-3860
Facsimile: (213) 386-5583
email: jds@rac-law.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE SOUTHERN CALIFORNIA BAKERY DRIVERS SECURITY FUND; DIRK GEERSEN,<br><br>Plaintiffs,<br><br>vs.<br><br>RICK MIDDLETON; BOB DOSS; RONN ENGLISH; PERRI NEWELL; SOUTH BAY TEAMSTERS AND EMPLOYERS HEALTH AND WELFARE AND RELATED BENEFITS TRUST FUND,<br><br>Defendants. | CASE NO. CV 03-5550 R (RZx)<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW [Fed. R. Civ. P. 52(a)]<br><br>Date: January 5, 2009<br>Time: 10:00 a.m.<br>Ctrm: 8 (Spring St.) |

Pursuant to the Interlocutory Judgment, entered August 5, 2008 as Docket No. 153, and Rule 53(f) of the Federal Rules of Civil Procedure, a Master was appointed to perform an Accounting for the purpose of determining the final judgment in this case. The Master has issued his report, and the parties have filed a Stipulation Regarding Report of Special Master. This matter came before the Court by noticed motion. The Court being fully advised makes the following findings of facts and conclusions of law:

## I. FINDINGS OF FACT

The court makes the following findings of fact:

PARTIES

1. Plaintiffs Trustees of the Southern California Bakery Drivers Security Fund (Bakery Drivers Trustees) are the trustees and fiduciaries as to the Southern California Bakery Drivers Security Fund (Bakery Drivers Fund), and appear here in their fiduciary capacity on behalf of the Bakery Drivers Fund. The Bakery Drivers Fund, is and at all times was, an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1) and a multi-employer plan within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A). The Bakery Drivers Fund is an express trust, created pursuant to various collective bargaining agreements, in accordance with LMRA § 302(c)(5), 29 U.S.C. § 186(c)(5). The Bakery Drivers Fund is administered in the County of Los Angeles, State of California. [Stipulation of Facts ¶ 1].[1/]

2. Plaintiff Dirk Geersen (Participant) is an individual residing in this district. Participant is, and has been a participant in the Bakery Drivers Fund since 1991. [Declaration of Linda Tonnancour (Tonnancour Decl) ¶ 5].

/ / /

---

1/ Citations are to the documents, declarations and exhibits previously filed in the District Court. The cited documents were reproduced in a Request for Judicial Notice filed by Plaintiffs. Judicial Notice is taken of the cited documents already in the Court's file.

3. Defendant South Bay Teamsters and Employers Health and Welfare and Related Benefits Trust Fund (South Bay Trust) is and at all times was, an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1) and a multi-employer plan within the meaning of ERISA § 3(37)(A), 29 U.S.C. § 1002(37)(A). The South Bay Trust is an express trust, created pursuant to various collective bargaining agreements. The South Bay Trust is administered in the County of Los Angeles, State of California. [Stipulation of Facts ¶ 2].

4. Defendants Rick Middleton; Bob Doss; Ronn English; Perri Newell (South Bay Trustees), are each individuals, and each have been trustees and fiduciaries of the South Bay Trust. [Stipulation of Facts ¶ 3].

BAKERY DRIVERS FUND

5. The Bakery Drivers Fund provides medical, dental, and other benefits described in ERISA § 3(1), 29 U.S.C. § 1002(1), for qualified participants and their beneficiaries. Pursuant to various collective bargaining agreements, employers contribute at specified rates to the Bakery Drivers Fund, for the purpose of providing such benefits to covered employees of such employers, and their designated beneficiaries. [Tonnancour Decl ¶ 2].

6. Among the benefits which have been provided by the Bakery Drivers Fund from participating employer contributions has been death benefits to designated beneficiaries of employees of employers participating in the Bakery Drivers Fund, as well as certain benefits to participants for the death of a spouse or dependent child. [Stipulation of Facts ¶ 4].

/ / /

7. Prior to August 1987, the Bakery Drivers Fund provided death and dismemberment benefits to its participants, through the purchase of insurance policy (or policies) from an insurance company. [Stipulation of Facts ¶ 6].

DEATH BENEFIT AGREEMENTS

8. The Trustees of the Bakery Drivers Fund and the Trustees of the South Bay Trust each approved an arrangement, effective August 1, 1987, whereby the Bakery Drivers Fund would pay to the South Bay Trust $5.50 per month for each of the active Bakery Drivers Fund participants, and the South Bay Trust would provide certain death and related benefits for those participants and certain retirees. That arrangement was later reflected in a written document. Subsequent written documents were entered into by the Bakery Drivers Fund and South Bay Trust, with essentially the same terms, but covering different time periods. These written documents, which will be referred to here as "Death Benefit Agreements" are the following exhibits, covering the following time periods:

Exhibit 1. August 1, 1987 - July 31, 1990
Exhibit 2. August 1, 1990 - July 31, 1993
Exhibit 3. August 1, 1993 - July 31, 1996
Exhibit 4. August 1, 1996 - until terminated.

[Stipulation of Facts ¶ 7].

9. The last Death Benefit Agreement, Exhibit 4, contained an automatic renewal clause, which continued from year to year, until specified notice was given. The dates on which each Death Benefit Agreement was signed, are as indicated on those Exhibits. The dates on which each Death Benefit Agreement were approved by the respective Trustees of each Fund, are as indicated in the minutes of each Fund. [Stipulation of Facts ¶ 8; Exhibits 1-4, 11, 12 and 69].

10. Each of the Death Benefit Agreements provides that "Security Fund desires and South Bay is willing that contributions be paid over from Security Fund to South Bay in order to fund the payment of death benefits to Security Fund participants on terms approximately equal to those which fund similar benefits for South Bay participants." [Ex.s 1, 2, 3 and 4, at p. 1].

11. Each of the Death Benefit Agreements further states "That a plan of death benefits is hereby established for Security Fund participants as set forth below:" Following that is a detailed description of the benefits, the terms of eligibility for those benefits, the manner of administration, and the manner in which the benefits shall be funded. As to funding, each Death Benefit Agreement states that "The Security Fund shall pay to South Bay, commencing [date varies by Agreement], the sum of $5.50 for each eligible active participant per month. The Security Fund shall transmit to South Bay monthly a list of active eligible participants." [Ex.s 1, 2, 3 and 4, at pp. 2 and 6].

ADMINISTRATION, PAYMENTS AND CLAIMS

12. The third-party administration of the benefits in the Death Benefit Agreements, during their terms, was provided by Southwest Administrators, Inc. (SWA). [Stipulation of Facts ¶ 9].

13. SWA is, and has been, the third-party administrator for the Bakery Drivers Fund. [Tonnancour Decl ¶¶ 1-2].

14. For each month from August 1987 through May 2001, SWA sent a report to the South Bay Trust, listing the participants of the Bakery Drivers Fund for that month. Accompanying each monthly report was a check, equivalent to the

number of Bakery Drivers Fund participants listed, times $5.50. The check was drawn from an account of the Bakery Drivers Fund. Each check was deposited by the South Bay Trust in a South Bay Trust Account. [Stipulation of Facts ¶ 10].

15. A total of $2,753,642.00 was paid from the Bakery Drivers Fund to the South Bay Fund in this manner. [Tonnancour Decl ¶ 11; Ex. 54].

16. SWA also sent an invoice each month to the South Bay Trust, for its administrative services regarding the Death Benefit Agreements. The South Bay Trust paid each such invoice directly to SWA, from its account. [Stipulation of Facts ¶ 11].

17. A total of $220,304.92 was paid by the South Bay Fund to SWA, for its services under the Death Benefit Agreement. [Tonnancour Decl ¶ 12; Ex. 54].

18. Claims for benefits under the Death Benefit Agreements were presented to SWA for review. SWA reviewed the claims, made a preliminary determination of eligibility, and then notified the South Bay Trust in that regard. If South Bay Trust concurred in that regard, it paid the claim. [Stipulation of Facts ¶ 12].

19. A total of 146 claims were paid by the South Bay Fund to Bakery Drivers Fund participants, retirees and/or their beneficiaries, pursuant to the Death Benefit Agreement. The total amount paid by the South Bay Fund to Bakery Drivers Fund participants, retirees and/or their beneficiaries, pursuant to the Death Benefit Agreement was $770,768.19. [Tonnancour Decl ¶ 13; Ex. 54].

TERMINATION

20. As directed by the Trustees of the Bakery Drivers Fund, SWA sent a letter to the administrator of the South Bay Trust, dated January 29, 2001, to terminate the Death Benefit Agreement after May 31, 2001. That letter is Exhibit 6. [Stipulation of Facts ¶ 14].

21. After May 31, 2001, no further payments were made from the Bakery Drivers Fund to the South Bay Trust. After May 31, 2001, no further payments were made by the South Bay Trust to SWA for services under the Death Benefit Agreements arising after that date. After May 31, 2001, no further claims under the Death Benefit Agreement were paid by the South Bay Trust, except claims which arose prior to that date. [Stipulation of Facts ¶ 15].

SURPLUS FUNDS

22. The payments by the Bakery Drivers Fund to the South Bay Fund exceeded the amount paid in claims, and paid for administrative expenses, by at least $1,762,568.89. [Tonnancour Decl ¶ 19; Ex. 54].

23. The monies paid from the Bakery Drivers Fund to the South Bay Trust were deposited in a general account of the South Bay Trust. A separate reserve was never kept for the Security Trust or its participants, but rather the funds were inter-mingled with other contributions to the South Bay Trust, all under the control of the Trustees of the South Bay Fund. Similarly, claims were paid to Bakery Drivers Fund participants and beneficiaries from the same account from which similar claims were paid to participants and beneficiaries of the South Bay Fund. [Stipulation of Facts ¶ 19].

DEMAND FOR RETURN OF FUNDS

24. As directed by the Trustees of the Bakery Drivers Fund, SWA sent a letter to the administrator of the South Bay Trust, dated January 10, 2002, to "request the transfer to the Security Fund of that portion of South Bay death benefit reserves as of June 1, 2001, attributable to the payments made on behalf of the Security Fund participants over the relevant period." That letter is Exhibit 44. [Stipulation of Facts ¶ 16].

25. Exhibit 44 was referred to counsel for the South Bay Trust, who reported to the Trustees of the South Bay Trust. At the South Bay Trust meeting of Trustees on March 20, 2002, that matter was discussed, and the following action taken: "After discussion and upon motion duly made, seconded and unanimously carried the request from the Bakery Drivers is denied, and Counsel is instructed to inform Counsel for the Bakery Drivers Trust Fund of the Board's decision." Each of the South Bay Trustees currently named as defendants in this action, except Perri Newell, voted in favor of that motion. Perri Newell was absent from that meeting. [Stipulation of Facts ¶ 17].

26. By letter dated May 31, 2002, Counsel for the South Bay Trust did so inform Counsel for the Bakery Drivers Trust Fund of the decision by the South Bay Trustees. That letter is Exhibit 48. [Stipulation of Facts ¶ 18; Declaration of Hirsch Adell, Ex. 48].

ACCOUNTING

27. Pursuant to the Interlocutory Order and Order Appointing Master for Acounting, an accounting was performed by Randy D. Henningfield, CPA. Pursuant

to Fed. R. Civ. P. 53(f) and the Stipulation of the parties, the Master's Report (Docket No. 178) is adopted by the Court, and the findings incorporated herein.

28. Pursuant to that Report, the Master found that the "Total Adjusted Surplus" should be $2,140,015.76. This includes the $1,762,568.89 Surplus Funds described above, plus actual investment return, less reasonable administrative costs (in addition to those of SWA).

29. The Master also found that $30,000.00 benefits were paid, which was not accounted for in Exhibit 54. Although this finding was beyond the scope of the Accounting assigned to the Master, the parties have stipulated to accept it, and the Court adopts that finding.

30. It is thus found that the total amount of $2,110,015.76 is the amount which belongs to the Bakery Drivers Fund.

TRUST ACCOUNT

31. Pursuant to paragraph one of the Interlocutory Order (Docket # 153) a Trust Account was created in order to "restore to the plaintiff particular funds or property in the defendant's possession." 29 U.S.C. § 1109(a)." That Trust Account was, and is, considered an asset of the Bakery Drivers, subject to this Court's jurisdiction.

32. Also pursuant to paragraph 1 of the Interlocutory Order, Defendants deposited into the Trust Account the sum of $1,762,568.89 on September 11, 2008.

33. According to the Master's Report, as adopted above, there thus remains the sum of $347,446.87 which belongs to the Bakery Drivers Funds, but remained in the hands of Defendants, at the time of the Master's Report.

34. Pursuant to the Order Denying Defendants' Ex Parte Application for Stay, and Clarifying the Interlocutory Order (Docket # 166), the Interlocutory Order was modified as follows:

> In no event may the Trust Account be disbursed or intermingled with other assets while any appeal is pending regarding this Interlocutory Order. Rather, the Trust Account shall continue to be maintained pursuant to the provisions of paragraph 1 of the Interlocutory Judgment, until exhaustion of any such appeals, or pursuant to Court Order.

The Trust Account thus remains in place, and continues to be administered pursuant to paragraph 1 of the Interlocutory Order.

35. On December 22, 2008, Defendants caused the sum of $347,446.87 to be deposited in the Trust Account.

## II. CONCLUSIONS OF LAW

1. This case comes to the Court on Mandate from the Ninth Circuit, remanding the case for specific purposes. The Ninth Circuit issued a published decision, *Trustees of the Southern California Bakery Drivers Security Fund v. Middleton*, 474 F.3d 642 (9th Cir.), *cert. denied*, 128 S.Ct. 378 (2007). That decision is incorporated by reference.

2. "When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court." *Firth v. United States*, 554 F.2d 990, 993 (9th Cir.1977). "On remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Stevens v. F/V Bonnie Doon*, 731 F.2d 1433, 1435 -1436 (9th Cir. 1984).

3. Defendants have attempted, on remand, to raise issues which were expressly or implicitly decided by the Ninth Circuit, such as the statue of limitations, laches, waiver and unclean hands. None of these issues are open for consideration here. "A district court, upon receiving the mandate of an appellate court 'cannot vary it or examine it for any other purpose than execution.'" *U.S. v. Cote*, 51 F.3d 178, 181 -182 (9th Cir. 1995), *quoting*, *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895). Those issues were "finally settled" and are no longer at issue. *See* *Planned Parenthood of Columbia/Willamette Inc. v. American Coalition of Life Activists*, 422 F.3d 949, 966 -967 (9th Cir. 2005).

4. Specifically, the Ninth Circuit found that "all assets paid-in" which is the $2,753,642.00 paid from the Bakery Drivers to the South Bay Fund, "are treated

as 'plan assets'" of the Bakery Drivers Fund. 474 F.3d 642, 646. The "South Bay Teamsters was an ERISA fiduciary of the plan assets of Bakery Drivers and that it breached its fiduciary duties with respect to those assets." Id.

5. The Ninth Circuit has already decided that the breach occurred "by failing to apply the surplus funds for the benefit of Bakery Drivers Security Fund participants." Id. This occurred when Defendants decided, at the meeting of the South Bay Trustees on March 20, 2002, not to use these funds for the benefit of Bakery Drivers' participants. Arguably, the time period was tolled until June 2002, when the Bakery Driver Fund Trustees were first informed of this decision. In any case, this action was brought within the time period of ERISA § 413, 29 U.S.C. § 1113.

6. Since the Ninth Circuit has already decided "that South Bay Teamsters is liable to Bakery Drivers for breaching its fiduciary duties under ERISA" id. at 647, any issue going to South Bay's liability may not be considered here. The Ninth Circuit was clear that the only issue on remand to this Court was "so that it may determine the appropriate remedy." Id. Only issues going to the "appropriate remedy" will be considered here.

7. The remedies available to this Court for a breach of fiduciary duty are set forth in ERISA § 409(a), 29 U.S.C. § 1109(a):

> "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through

use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

8. Since it is established that the payments made from the Bakery Drivers to the South Bay Fund remain assets of the Bakery Drivers Fund, and that Defendants breached their fiduciary duties as to those assets, the first order of business must be to remove those assets from the control of the Defendants, and return them to the control of the Trustees of the Bakery Drivers Fund.

9. It is established that $2,753,642.00 was paid from the Bakery Drivers to the South Bay Fund, which remained Bakery Driver assets. It is undisputed that $770,768.19 was paid from those funds for benefits to Bakery Driver participants, and $220,304.92 was paid from those funds to Southwest Administrators (SWA) to administer those benefits. Therefore, there is a "surplus" of at least $1,762,568.89 which belong to the Bakery Drivers, but remained under the control of Defendants, who have breached their fiduciary duty toward those funds.[2/]

10. Pursuant to paragraph 1 of the Interlocutory Judgment (Docket # 153) a Trust Account was created. This remedy of placing a trust over the assets is not an assessment of damages, but a traditional equitable remedy available under ERISA §

---

2/ These figures are based on Exhibit 54, which is a summary of the reports, payments and claims, over the 14 - year administration of the Death Benefit Agreements, by the person who was in charge of administering them. It is therefore admissible as a summary of voluminous documents, under Fed. R. Ev. 1006. Defendants, who have had access to the underlying documents for years, have not presented any evidence to counter these calculations, except as to additional amounts they claim for administration, and facts uncovered by the Master in his Accounting, discussed below.

409. The establishment of this Trust Account was also consistent with ERISA § 403(a), 29 U.S.C. § 1103(a), which requires that the assets of an ERISA plan be kept in trust.

11. Pursuant to paragraph 2 of the Interlocutory Order, Defendants were ordered to provide an Accounting of "any losses to the plan resulting from" their breach of fiduciary duty, and of "any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, . . . ." 29 U.S.C. § 1109(a). "The fiduciary accounting for profits was traditionally an equitable claim." I Dan. B. Dobbs, Dobbs Law of Remedies: Damages-Equity-Jurisdiction § 4.3(5) at 613 (2nd Ed. 1993). Such an Accounting is appropriate for referral to a Special Master, under Fed. R. Civ. P. 53. Under this equitable remedy of Accounting, the burden was placed on Defendants, not Plaintiffs, to establish what has happened to Plaintiffs' assets. *See* Kim v. Fujikawa, 871 F.2d 1427, 1430-31 (9th Cir.1989) ("court should resolve doubts in favor of the plaintiffs").

12. Pursuant to paragraph 2 of the Interlocutory Order, and the Order appointing Special Master for accounting, RANDY D. HENNINGFIELD was appointed as Special Master, under Fed. R. Civ. P. 53, to perform this Accounting. The Report of the Special Master was filed as Docket No. 178 on December 1, 2008.

13. Rule 53(f) of the Federal Rules of Civil Procedure provide that the Master's Report be reviewed *de novo*, unless the parties stipulate otherwise, with the Court's approval. In this case, the parties have stipulated to accept the findings and Report of the Special Master, and the Court approves that stipulation. The Report of the Special Master, which is Attachment A hereto, is therefore adopted by the Court.

14. Section 409(a) of ERISA also provides that a breaching fiduciary "shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to the plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary . . . ." 29 U.S.C. § 1109(a). According to the Master's Report, adopted by the Court, the total amount of $2,140,015.76 is the amount which belongs to the Bakery Drivers Fund. This includes the amount of $1,762,568.89 found to be "Surplus Funds" above, which has already been paid into the Trust Account. There thus remains the sum of $377,446.87 which belongs to the Bakery Drivers Funds, but remains in the hands of Defendants. The Master additionally found, and the parties have stipulated to accept, the fact that there were $30,000.00 additional benefits paid by the South Bay Trust for Bakery Driver participants, which had not been accounted for in Exhibit 54. Crediting that amount, there remained $347,446.87. That is the amount of Bakery Driver assets which remained to be turned over by Defendants, pursuant to ERISA § 409(a), at the time of the Master's Report.

15. There is therefore now no amount due, and no money judgment needs to be entered against the individual defendants. All amounts belonging to the Bakery Drivers Fund is now in the Trust Account.

16. Pursuant to 29 U.S.C. § 1109(a) and paragraph 4 of the Interlocutory Judgment, JUDGMENT is entered against Defendants, in the form of a trust over the amounts belonging to the the Southern California Bakery Drivers Security Fund, which is the Trust Account created by the Interlocutory Judgment, including the $347,446.87 recently deposited. The Trust Account is the *res* which is the subject of this Judgment, and recourse may only be had against the Trust Account to enforce this Judgment.

17. Pursuant to the parties Stipulation, it is FURTHER ORDERED that the Trust Account shall continue under the jurisdiction of this Court pending any appeals. In no event may the Trust Account be disbursed or intermingled with other assets while any appeal is pending. Rather, the Trust Account shall continue to be maintained pursuant to the provisions of paragraph 1 of the Interlocutory Judgment, until exhaustion of any such appeals, or pursuant to Court Order.

18. Judgment shall be entered accordingly, which is FINAL as to all parties and claims. Any application for costs or fees shall be made in accordance with this Order and Local Rules 54-3 through 54-12.

[Read by the Court and adopted as the Court's Findings supported by admissable evidence]

SO ORDERED.

Dated: January 6, 2009

HON. MANUEL L. REAL
U.S. DISTRICT COURT JUDGE

Submitted By:

HIRSCH ADELL and
J. DAVID SACKMAN, Members of
REICH, ADELL & CVITAN
A Professional Law Corporation

By: /S/
J. DAVID SACKMAN
Attorneys for Plaintiffs